UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

SOJENHOMER LLC,
7783 STH 42 LLC, and
CONCH CO. INC.,

        Plaintiffs,

v.                                             Case No. 23-C-44

VILLAGE OF EGG HARBOR BOARD OF TRUSTEES,
VILLAGE OF EGG HARBOR PLAN COMMISSION,
CAMBRIA H. MUELLER,
JOHN C. HELLER,
CHRISTOPHER ROEDL,
JON KOLB,
LISA VAN LAANEN,
ANGELA LENSCH, and
KENNETH H. MATHYS,

        Defendants.

---

**DECISION AND ORDER GRANTING DEFENDANTS'
MOTION FOR JUDGMENT ON THE PLEADINGS**

---

        Plaintiffs Sojenhomer LLC, 7783 STH 42 LLC, and Conch Co. Inc. brought this action against the Village of Egg Harbor Board of Trustees, the Village of Egg Harbor Plan Commission, and individual members of both the Board and Plan Commission seeking compensatory and punitive damages for the denial of a conditional use permit application and of an expansion of liquor license premises application. They claim Defendants are liable under 42 U.S.C. § 1983 for violations of their equal protection rights as a class of one, substantive due process rights, and procedural due process rights. Plaintiffs also allege a cause of action under 42 U.S.C. § 1985(3) against all of the defendants for conspiracy to stop Plaintiffs' building expansion project in violation of Plaintiffs' constitutional rights to equal protection of the law, substantive due process,

and procedural due process. The court has jurisdiction under 28 U.S.C. § 1331, and this matter is before the court on Defendants' motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). For the following reasons, the motion will be granted, and the case dismissed.

## LEGAL STANDARD

Rule 12(c) of the Federal Rules of Civil Procedure permits a party to seek judgment on the pleadings after the pleadings have been closed. *Buchanan-Moore v. Cnty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009). Courts apply the same standards in deciding a motion for judgment on the pleadings as they do in deciding a motion to dismiss. *Landmark Am. Ins. Co. v. Hilger*, 838 F.3d 821, 824 (7th Cir. 2016). To survive a motion to dismiss or for judgment on the pleadings, the challenged pleading must "contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## ALLEGATIONS CONTAINED IN THE COMPLAINT

Plaintiffs are the owners and operators of Shipwrecked Brewpub, a restaurant located at the intersection of State Highway 42 and County Highway G in Egg Harbor, Wisconsin. Compl. ¶¶ 1–3, 16–19, Dkt. No. 1. Plaintiffs acquired an adjacent property as part of a building expansion project, to increase the number of seats in their restaurant. *Id.* ¶¶ 20–21. Under local ordinances, the project requires a zoning conditional use permit (CUP) and an expansion of Plaintiffs' existing liquor license for the sale of alcohol in the new premises. *Id.* ¶¶ 22, 53. Wisconsin state statutes and the Village Zoning Ordinance grant the Plan Commission the authority to hear and decide CUP applications. *Id.* ¶ 68.

On March 23, 2021, Plaintiffs applied for a CUP with the Plan Commission. *Id.* ¶ 30. On May 11, 2021, during the Plan Commission's first public hearing on the matter, Defendants Jon Kolb and Christopher Roedl, both members of the Commission, recused themselves. *Id.* ¶ 36. They did so on account of donations that each one of them had made toward a GoFundMe campaign that seemingly opposed expansion projects, like Plaintiffs', in the community. *Id.* ¶¶ 26–29, 33. Additionally, Roedl had sent a letter to the Plan Commission expressing his opposition to Plaintiffs' project before his appointment to the Plan Commission. *Id.* ¶ 25. After recusing himself, Kolb testified as a member of the public at the May 11 hearing. Kolb later reinstated himself as part of the Plan Commission, participated in the Plan Commission's meetings about the CUP application, and voted with the rest of the Plan Commission members. *Id.* ¶¶ 53, 61. Kolb voted on the CUP in a meeting on September 28, 2021. *Id.* ¶¶ 57–58. His vote caused a tie. *Id.* As a result, the Plan Commission tabled the matter for another meeting. *Id.* ¶ 59. Before the Plan Commission was to again vote and after he had recused himself, Roedl had two private communications with Plan Commission members, detailing arguments for denial. *Id.* ¶¶ 51, 55. Roedl's arguments for denial were, among other reasons, based on scale, mitigation of congestion, and safety. *Id.* After two public hearings and several meetings discussing the matter, the Plan Commission denied the CUP application on October 13, 2021. *Id.* ¶ 60. The Plan Commission issued a written decision on October 29, 2021. *Id.* ¶ 65.

On November 24, 2021, Plaintiffs filed an appeal for certiorari review in the Door County Circuit Court against the Plan Commission for the denial of the CUP. *Id.* ¶ 51. On October 5, 2022, the Door County Circuit Court held that the Plan Commission was biased, reversed the Commission's decision, and ordered the issuance of the CUP. *Id.* ¶ 52. After the Circuit Court's decision and order to issue the CUP, Plaintiffs applied for the expansion of their liquor license to

accommodate the new premises that would result from the building expansion.  *Id.* ¶ 53.  Before deciding the application, the Village Board requested a map showing the area of the proposed liquor license expansion.  *Id.* ¶ 56.  Plaintiffs complied with the request and submitted a map of the liquor license premises.  *Id.* ¶ 59.  On November 14, 2022, the Village Board denied the liquor license expansion.  *Id.* ¶ 60.  Plaintiffs allege that the Village Board denied the expansion application due to the fact that the Plan Commission had denied the application for the CUP.  *Id.* ¶ 61.

## ANALYSIS

### A. Equal Protection

Plaintiffs assert class-of-one equal protection claims in connection to the denial of their CUP application, the denial of their liquor license expansion application, and their cause of action for conspiracy.  The Equal Protection Clause of the Fourteenth Amendment provides that "no State shall . . . deny to any persons within its jurisdiction the equal protection of laws."  U.S. Const. amend. XIV, § 1.  Although it is generally understood as protecting members of vulnerable groups from unequal treatment attributable to the state, *see Bell v. Duperrault*, 367 F.3d 703, 707 (7th Cir. 2004), the Court has held that it is possible to state an equal protection claim on behalf of a "class of one" where there is no allegation of membership in a class or group.  *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam).  Under this reading, the Equal Protection Clause also proscribes state action that irrationally singles out and targets an individual for discriminatory treatment as a so-called "class-of-one."  *Reget v. City of La Crosse*, 595 F.3d 691, 695 (7th Cir. 2010); *Olech*, 528 U.S. at 564.

"[A] plaintiff states a class-of-one equal protection claim by alleging that he has been intentionally treated differently from others similarly situated and that there is no rational basis for

4

the difference in treatment." *LaBella Winnetka, Inc. v. Vill. of Winnetka*, 628 F.3d 937, 942 (7th Cir. 2010) (quotation marks omitted). "To be considered 'similarly situated,' a plaintiff and his comparators (those alleged to have been treated more favorably) must be identical or directly comparable in all material respects." *Id.* "As a general rule, whether individuals are similarly situated is a factual question for the jury." *McDonald v. Vill. of Winnetka*, 371 F.3d 992, 1002 (7th Cir. 2004). Further, "a plaintiff need not identify a similarly situated entity in its complaint." *FKFJ, Inc. v. Vill. of Worth*, 11 F.4th 574, 590 (7th Cir. 2021). However, "dismissal at the pleading stage [is] appropriate" when a plaintiff "fail[s] to allege facts tending to show that it was similarly situated to any of the comparators." *LaBella Winnetka, Inc.*, 628 F.3d at 942.

Here, Plaintiffs allege that Defendants intentionally treated them differently from other CUP applicants, other liquor license holders, and other restaurants located in Egg Harbor, without identifying any particular entity. Compl. ¶¶ 74–75, 82. Other than their conclusory allegations that "the Plan Commission and its members intentionally treated [Plaintiffs' application] different than [applications of] other restaurants and taverns in Egg Harbor," however, Plaintiffs have alleged no facts that would even suggest that the "similarly situated" element of their class-of-one equal protection claims can be met. Although the lack of a particular comparator in the complaint is generally not a basis for dismissal of an equal protection claim at the pleading stage, the facts alleged here suggest that none will be forthcoming. The reasons given for the denial—safety concerns due to congestion, proximity to residential areas, and the location of the premises' busy corner—indicate that Plaintiffs' application was unique. Dkt. No. 7 at 18–21; Dkt. No. 29 at 4. Even the makeup of the Commission appears to have recently changed, as Roedl was just appointed. Compl. ¶ 32; *see also Moreland v. Nielsen*, 900 F.3d 504, 507 (7th Cir. 2018) (plaintiff in employment discrimination case not similarly situated where decision-makers are different).

5

Given these characteristics, Plaintiffs' failure to allege any facts suggesting that other establishments in similar locations were treated more favorably is fatal.

But even if the allegations in the complaint could somehow satisfy the "similarly situated" element, Plaintiffs have failed to allege that Defendants lacked a rational basis for the difference in treatment. Class-of-one "plaintiffs must allege that state actors lacked a rational basis for singling them out for intentionally discriminatory treatment." *Miller v. City of Monona*, 784 F.3d 1113, 1121 (7th Cir. 2015). "It is not enough for a complaint to suggest an improper motive, for a given action can have a rational basis and be a perfectly logical action for a government entity to take even if there are facts casting it as one taken out of animosity. Thus, even at the pleading stage, all it takes to defeat a class-of-one claim is a *conceivable* rational basis for the difference in treatment." *Id.* (internal citations and quotation marks omitted). If the complaint reveals "a rational basis for the challenged action, that will be the end of the matter—animus or no." *Fares Pawn, LLC. v. Ind. Dep't of Fin. Insts.*, 755 F.3d 839, 845 (7th Cir. 2003).

Plaintiffs seem to assume that if they met certain conditions, they were entitled to a CUP as a matter of right. But that is not the law in Wisconsin. *See AllEnergy Corp. v. Trempealeau Cnty. Env't & Land Use Comm.*, 2017 WI 52, ¶ 55, 375 Wis. 2d 329, 895 N.W.2d 368 ("[O]ur precedent dictates that no presumption exists that a conditional use is ipso facto consistent with the public interest or that a conditional use is a use as of right at a particular site within an area zoned to permit that conditional use." (Abramson, J., with one justice concurring and two justices concurring in mandate)). In other words, just because Plaintiffs may have met conditions that would have allowed issuance of the CUP does not mean they were entitled to it.

Here, the complaint reveals a rational basis for Defendants' actions. The Plan Commission received reasoned arguments in favor of denying the CUP application based on scale, mitigation of congestion, and safety. Compl. ¶¶ 52, 55. The Plan Commission issued a written decision, denying the CUP. *Id.* ¶ 65. The decision reasoned that granting the CUP would raise safety concerns based on traffic congestion in the area, high levels of pedestrian traffic, and insufficient parking. Dkt. No. 7 at 18–21. The Village Board denied the liquor license expansion for the same reasons. Compl. ¶ 61. To aid its decision, the Village Board received a map of the proposed liquor license premises, as requested. *Id.* ¶ 59. In the November 14, 2022 meeting, members of the Village Board expressed safety concerns with the new premises' proximity to residential areas, the potential for pedestrian congestion next to a busy state highway, and people drinking and going into the state highway. Dkt. No. 29 at 4.

Taken as a whole, and without disregarding allegations of Defendants' intentionally disparate treatment, the complaint more than suggests a rational basis for the CUP and liquor license decisions. It thus follows that Plaintiffs fail to state a class-of-one equal protection cause of action, and their claims are dismissed.

## B. Procedural Due Process

Plaintiffs also allege that Defendants deprived them of their procedural and substantive due process rights by denying the CUP and liquor license applications and by the actions of Kolb and Roedl. Compl. ¶¶ 78–79, 86. Although the arguments seem to overlap at times, the court will address both claims separately, beginning with the procedural due process claim.

"To state a Fourteenth Amendment claim for the deprivation of a property interest without due process, a plaintiff must [allege] that (1) he had a constitutionally protected property interest, (2) he suffered a loss of that interest amounting to a deprivation, and (3) the deprivation occurred

7

without due process of law." *LaBella Winnetka, Inc.*, 628 F.3d at 943–44. With respect to the first two elements, "[a] wish to have a license is not [a] 'property' [interest]." *Scott v. Vill. of Kewaskum*, 786 F.2d 338, 349 (7th Cir. 1986). "To the extent a request appeals to discretion rather than to rules, there is no property." *Id.* at 340. Here, the determination of Plaintiffs' applications was discretionary. Wisconsin courts have "repeatedly characterized liquor licenses as 'privileges,' to be doled out at the discretion of local governments." *Id.* Wisconsin statutes and the Village Zoning Ordinance grant the Plan Commission discretionary authority to decide CUP applications. Compl. ¶ 68; *see also AllEnergy Corp.*, 375 Wis. 2d 329, ¶ 54 ("In Wisconsin, and in many states, a conditional use is one that has been legislatively determined to be compatible in a particular area, not a use that is always compatible at a specific site within that area. In these states, the decision whether to grant a conditional use permit is discretionary."). Thus, Plaintiffs fail to allege facts that would show a constitutionally protected property interest.

But even if Plaintiffs sufficiently alleged a property interest, the complaint fails to allege facts that would show Defendants deprived them of that interest without due process. "[T]he procedures 'due' in a zoning case are minimal. Cities may elect to make zoning decisions through the political process." *River Park, Inc. v. City of Highland Park*, 23 F.3d 164, 166 (7th Cir. 1994). "The decision whether and what kind of land uses to permit does not have the form of a judicial decision." *Coniston Corp. v. Hoffman Estates*, 844 F.2d 461, 468 (7th Cir. 1988). Similarly, determinations about liquor license applications need not mirror a judicial proceeding because they deal with privileges granted or denied at the discretion of a governing body. *See Scott*, 786 F.2d at 342 ("[b]ecause the decision to deny a license deprived the Scotts of neither 'liberty' nor 'property,' the village board did not need to give an evidentiary hearing and state reasons").

8

Nevertheless, Plaintiffs were afforded notice and multiple hearings in relation to their CUP application. Compl. ¶ 60. Likewise, the Village Board provided reasons for its denial. *Id.* ¶ 61.

Still, Plaintiffs argue that whatever process was afforded to them was tainted by allegedly biased Plan Commission members and the delay of a decision on their CUP application. Dkt. No. 18 at 14. They assert a due process right to a fair and impartial hearing—a right to expect not only that the decision about their applications would be made by unbiased Commission members but that the fact-finding process would be "untainted" by their participation. Dkt. No. 18 at 8–10. They note in their complaint that the Circuit Court for Door County reversed the Commission's denial of the application and ordered that it be granted. Compl. ¶ 52.

It is true that the state court found that the expressed views of Roedl and Kolb in opposition to Plaintiffs' project created an impermissibly high risk of bias and held that their actions after recusing themselves were grounds for reversal. Dkt. No. 32 at 5. But this court is not bound by a state court decision applying state law in determining whether Plaintiffs have stated a claim arising under federal law. *See Harding v. Cnty. of Door*, 870 F.2d 430, 432 (7th Cir. 1989) (finding a rational basis in a municipal zoning board's decision to revoke a building permit after the Wisconsin Court of Appeals had determined that the board's interpretation of the zoning ordinance was erroneous). Moreover, "the Constitution does not require state and local governments to adhere to their procedural promises." *River Park, Inc.*, 23 F.3d at 166.

Plaintiffs' due process argument, such as it is, relies primarily on the Wisconsin Supreme Court's decision in *Marris v. City of Cedarburg*, 176 Wis. 2d 14, 498 N.W.2d 846 (1993). In *Marris*, the City's Zoning Board of Appeals determined that the plaintiff's property had lost its nonconforming use status because total lifetime structural repairs or alterations to the property, as defined by the city ordinance, exceeded 50% of the property's current assessed value. *Id.* at 19.

9

The plaintiff alleged that the chairperson of the Board was biased against her and had prejudged the case, based on several comments he had made about her case and disparaging remarks he made about her personally before the hearing. As a result, the plaintiff claimed she was deprived of her common-law right to due process. *Id.* at 24–27. The Wisconsin Supreme Court agreed and vacated the Board's decision. *Id.* at 31. Plaintiffs argue that the allegations in this case that Kolb and Roedl prejudged their project and nevertheless participated in the Commission's proceedings is sufficient to state a due process claim under *Marris*.

Upon a closer reading, however, it does not appear that *Marris* supports Plaintiffs' claim that participation by Kolb and Roedl in the proceedings denied them due process even under state law. In ruling that the plaintiff's right to a fair hearing was violated, the court in *Marris* did not hold that members of a zoning board could have no opinions about matters coming before them. The court recognized "that zoning decisions implicate important private and public interests; they significantly affect individual property ownership rights as well as community interests in the use and enjoyment of land." *Id.* at 25. For this reason, the court noted, an entirely impartial decisionmaker is not required in all zoning cases:

> a board member's opinions on land use and preferences regarding land development should not necessarily disqualify the member from hearing a zoning matter. Since they are purposefully selected from the local area and reflect community values and preferences regarding land use, zoning board members will be familiar with local conditions and the people of the community and can be expected to have opinions about local zoning issues.

*Id.* at 26. The reason that the chairman's involvement in the decision of the Board in *Marris* was unfair, the court explained, was due to the characteristics of the proceeding. The zoning decision in *Marris* required that Board to "examine a specific piece of land and the activities of a particular property owner," namely, whether the money spent by the owner on structural repairs or alterations exceeded 50% of the property's assessed value. *Id.* at 23, 26.

As the court explained in the more recent case of *Miller v. Zoning Board of Appeals of Village of Lyndon Station*, "the board's decision in *Marris* was adjudicative—it focused on how to apply the existing zoning law to particular facts and circumstances, not on whether to enact, alter, or repeal the existing zoning law." 2023 WI 46, ¶ 18, 407 Wis. 2d 678, 991 N.W.2d 380. The court contrasted the adjudicative decision the Board was required to make in *Marris* with legislative actions such boards are called on to take involving amendments to zoning ordinances. *Id.* at ¶¶ 12–14, 17–18. "[W]hen adjudicative acts are involved," the court explained, "procedural due process requires impartial decision-makers." *Id.* at ¶ 13. But "[w]hen legislative actions are at issue, . . . those affected by legislation 'are not entitled to any process beyond that provided by the legislative process.'" *Id.* at ¶ 14 (quoting *Jones v. Governor of Florida*, 975 F.3d 1016, 1048 (11th Cir. 2020). "Accordingly," the court concluded, "because 'a legislative determination provides all the process that is due,' partiality on the part of legislators does not violate the Due Process Clause." *Id.* (quoting *Protect Our Parks, Inc. v. Chi. Park Dist.*, 971 F.3d 722, 738 (7th Cir. 2020)).

Plaintiffs' application for a CUP in this case is more in the nature of a legislative decision, since it involves granting an application for a use that is subject to closer regulation than a permissive use under the applicable zoning laws. *See Town of Rhine v. Bizzell*, 2008 WI 76, ¶ 21, 311 Wis. 2d 1, 751 N.W.2d 780 ("A conditional use permit allows a property owner to put his property to a use which the ordinance expressly permits when certain conditions [or standards] have been met." (internal quotation omitted)).

Given the character of the issue before the Commission, the fact that Kolb and Roedl were already opposed to Plaintiffs' CUP application is insufficient to state a federal due process claim. "[H]aving strong views about wise public policy has never been understood to be the sort of 'bias'

11

Case 1:23-cv-00044-WCG   Filed 10/18/23   Page 11 of 14   Document 35

that either commissioners or judges must avoid." *Batagiannis v. West Lafayette Cmty. Sch. Corp.*, 454 F.3d 738, 742 (7th Cir. 2006) (explaining how certain administrative authorities, like the FTC, may both take a stand about what the law requires by filing a complaint and also adjudicate that complaint). In *Batagiannis*, the Seventh Circuit held that due to the character of a governing body that sets policy, like a school board, a superintendent waived any due process right to a hearing before a neutral decision-maker when she agreed to a termination hearing before the school board. *Id.* at 741. Insisting that such a governing body be neutral in these hearings "would cripple the democratic process." *Id.* If due process required neutrality in this context, whenever constituents would vote in members of a governing body to set certain policies in reliance on their platforms, those members would be unable to enact those policies because "they would have prejudged the issue." *Id.* But "[t]he due process clause does not prevent the creation of new policy; and when policy is carried out through appointees, the requirement for an opportunity for a hearing must be implemented in a way that allows the politically responsible office-holders to achieve their aims." *Id.* at 741–42.

Like a school board, the Plan Commission is a governing body that sets policy. Members of the Plan Commission are appointed by the Village Board. Having views, even strong views, about downtown development and zoning issues, such as the use of CUPs to expand bars and restaurants, does not disqualify individuals from serving in either elected or appointed positions on boards charged with implementing policy over such matters. Thus, the fact that some members may have thought Plaintiffs' application for a CUP should be denied and nevertheless participated in the hearing and decision is not a violation of due process. Kolb and Roedl were, "[s]o far as the Constitution is concerned, . . . entitled to act on their views about how" the CUP would impact the community. *Id.* at 742. Plaintiffs' due process rights "in these proceedings are protected not by

insisting that the commissioners arrive with empty heads but by ensuring an opportunity for judicial review of each decision," which Plaintiffs had recourse to through available state law remedies. *Id.* "Federal courts are not boards of zoning appeals." *River Park, Inc.*, 23 F.3d at 165. Because Plaintiffs fail to state a procedural due process claim, their claims are dismissed.

## C. Substantive Due Process

Having disposed of Plaintiffs' procedural due process claim, the court now turns to Plaintiffs' claim that Defendants deprived them of their substantive due process rights by denying the CUP and liquor license applications and by the actions of Kolb and Roedl. "Substantive due process claims can address harmful, arbitrary acts by public officials. But such claims must meet a high [pleading] standard, even when the alleged conduct was abhorrent, to avoid constitutionalizing every tort committed by a public employee." *Geinosky v. City of Chicago*, 675 F.3d 743, 750 (7th Cir. 2012). To state a substantive due process claim, a plaintiff must allege facts suggesting that "[a] government entity must have exercised its power without reasonable justification in a manner that 'shocks the conscience.'" *Bettendorf v. St. Croix Cnty.*, 631 F.3d 421, 426 (7th Cir. 2011). "Unless a governmental practice encroaches on a fundamental right, substantive due process requires only that the practice be rationally related to a legitimate government interest." *Lee v. City of Chicago*, 330 F.3d 456, 467 (7th Cir. 2003).

Here, Plaintiffs do not plead facts suggesting conduct by any defendant that shocks the conscience. As explained above, the Plan Commission had a rational basis to deny the CUP. Likewise, the Village Board had a rational basis for its liquor license decision, relying on many of the same reasons the Plan Commission had given to justify its determination. Dkt. No. 29 at 4. And for the reasons explained above, the fact that several members of the Commission opposed the expansion of Plaintiffs' bar and restaurant before their appointment is not enough to support a

13

procedural due process claim. It certainly is not enough to support a claim for substantive due process.

### D. 42 U.S.C. § 1985(3) Conspiracy

Plaintiffs allege that Defendants conspired to stop the building expansion of Shipwrecked Brewpub restaurant, in violation of their constitutional rights. To state a claim, "§ 1985(3) requires that the plaintiff allege . . . four elements: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States. *Grimes v. Smith*, 776 F.2d 1359, 1363 (7th Cir. 1985). Thus, to maintain a § 1985(3) claim, a plaintiff must allege a plausible, underlying civil rights claim because "conspiracy is not an independent basis of liability." *Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008). Since Plaintiffs failed to state the underlying claims alleging depravation of their equal protection, substantive due process, and procedural due process rights, Plaintiffs have failed to state a § 1985(3) conspiracy cause of action, and their claim is dismissed.

### CONCLUSION

For these reasons, Defendants' motion for judgment on the pleadings (Dkt. No. 12) is **GRANTED** and the case is dismissed. The Clerk is directed to enter judgment accordingly.

**SO ORDERED** at Green Bay, Wisconsin this 18th day of October, 2023.

s/ William C. Griesbach
William C. Griesbach
United States District Judge
